**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTINE RYNKIEWICZ,**<br>**Plaintiff,**<br><br>**v.**<br><br>**DEER MEADOWS HOME HEALTH & SUPPORT SERVICES, LLC,**<br>**Defendant.** | **CIVIL ACTION**<br><br><br><br><br>**NO. 26-cv-525** |

# MEMORANDUM OPINION

Plaintiff Christine Rynkiewicz ("Mrs. Rynkiewicz") has sued Deer Meadows Home Health & Support Services, LLC ("Deer Meadows" or "Defendant") for a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Deer Meadows has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, Deer Meadows' motion for summary judgment shall be granted.

## I. FACTUAL BACKGROUND

For more than a decade, Mrs. Rynkiewicz worked at Deer Meadows, first as an Administrative Assistant and then as a Human Resources Coordinator. Throughout her tenure, she was a part-time employee working approximately two days a week. Her husband was also employed by Deer Meadows as an Administrator. In August 2025, Mr. Rynkiewicz provided the company with four weeks' notice of his intent to resign. Deer Meadows' Employee Handbook provides that employees who give at least two weeks' written notice are entitled to payment for accrued and unused paid time off ("PTO"). Consistent with that policy, Mr. Rynkiewicz requested payment for his unused PTO in his resignation notice. Although he ultimately resigned earlier than anticipated—nineteen days after providing notice—he did so beyond the Handbook's minimum notice period for PTO payout eligibility.

When Deer Meadows refused to compensate him for his unused PTO and also withheld a week's worth of pay, Mr. Rynkiewicz, with his wife's assistance, prepared and filed a complaint with the Pennsylvania Department of Labor ("DOL"), alleging that wages had been unlawfully withheld from him. However, prior to receiving notice of Mr. Rynkiewicz's complaint, Deer Meadows decided to restructure its Human Resources department. Larry Blacker, who took over Mr. Rynkiewicz's role after his departure, decided to convert Mrs. Rynkiewicz's position in HR into a full-time role. The decision was approved by Lisa Sofia, President and CEO of Deer Meadows. From there, Deer Meadows posted the job description and worked with a recruiter to identify candidates for the role. Mr. Blacker told Mrs. Rynkiewicz about the decision to convert her role to full-time and offered her the opportunity to apply for the full-time role. Mrs. Rynkiewicz never asked to interview for the full-time role, and she had decided that she could not take on a full-time role given her other commitments. Deer Meadows hired someone else for the full-time role. Shortly thereafter, Deer Meadows informed Mrs. Rynkiewicz that it was terminating her part-time role.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law," *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009)

(citation omitted), and an issue of material fact is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248-49, 252. In evaluating a summary judgment motion, the facts are viewed in the light most favorable to the nonmoving party, and any reasonable inferences must be made in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then present affirmative evidence from which a reasonable trier of fact could return a verdict in its favor. *Anderson*, 477 U.S. at 257.

## III. DISCUSSION

### a. Retaliation Under the Fair Labor Standards Act

Mrs. Rynkiewicz's sole claim is for violation of the Fair Labor Standards Act ("FLSA"). The FLSA makes it unlawful for employers "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Section 215(a)(3) seeks to prevent employer conduct that might chill complaints and "induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). "[T]he guiding principle of interpreting Section [215(a)(3)] is to prevent a fear of retaliation from chilling employees' assertion of FLSA rights." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 270 (3d Cir. 2022).

FLSA retaliation claims are analyzed at summary judgment under the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walls v. Abington Surg. Ctr.*, 758 F. Supp.3d 376, 387 (E.D. Pa. 2024) (analyzing a plaintiff's retaliation claims under Title VII and the FLSA using the burden-shifting framework). First, the plaintiff must establish a *prima facie* case of unlawful conduct. *McDonnell Douglas*, 411 U.S. at 802. Then, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection [or termination]." *Id.*; *see also Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). If the defendant meets that burden the, "burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). That is, "to defeat summary judgment . . . , the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

A defendant "is entitled to summary judgment if it can demonstrate that the plaintiff could not carry the burden of proof at trial." *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). "The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a prima facie case of discrimination; or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for the discharge." *Id.* Here, the record lacks sufficient evidence of pretext to rebut Deer Meadows' assertion of a legitimate, nondiscriminatory reason for her termination.

**b. Mrs. Rynkiewicz's Retaliation Claim**

Mrs. Rynkiewicz argues that she engaged in protected activity under the FLSA by assisting her husband in the preparation of his Pennsylvania DOL complaint and that Deer Meadows terminated her employment as a result. To establish the *prima facie* case of retaliation under the FLSA, a plaintiff must show that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him [sic], and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp.3d 807, 814 (E.D. Pa. 2015). Even assuming, *arguendo*, that Mrs. Rynkiewicz has established a *prima facie* case for retaliation under the FLSA—and this Court takes no position as to whether she does—her claim nevertheless fails because no reasonable jury could find that the justification Deer Meadows' identifies as being a legitimate, nondiscriminatory reason for her termination was pretextual.

**i. Deer Meadows' Legitimate Nondiscriminatory Reason for Terminating Mrs. Rynkiewicz**

Deer Meadows argues that it terminated Mrs. Rynkiewicz following a restructuring of her role from part-time to full-time. "Defendants possess only a low burden of production to complete the second prong of the *McDonnell Douglas* framework." *Brooks v. Randstad Techs., LLC*, 2022 WL 874946, at *9 (E.D. Pa. Mar. 24, 2022) (citing *Parson v. Vanguard*, 702 F. App'x 63, 67 (3d Cir. 2017); *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) ("This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'") (quoting *Fuentes*, 32 F.3d at 773).

"The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable

employment decision." *Fuentes*, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason actually motivated its behavior." *Id.* Here, Deer Meadows argues that Mrs. Rynkiewicz was terminated because it decided to convert her position into a full-time role that Mrs. Rynkiewicz failed to apply for. The factual record demonstrates that Deer Meadows decided to convert Mrs. Rynkiewicz's role to full-time prior to receiving notice of Mr. Rynkiewicz's DOL complaint. Therefore, Deer Meadows has met its burden under step two of the *McDonnell Douglas* framework.

**ii. Pretext**

Having found that Deer Meadows has offered a legitimate, nondiscriminatory reason for terminating Mrs. Rynkiewicz, the question turns to whether Mrs. Rynkiewicz has identified evidence from which a reasonable jury could find that Deer Meadows' explanation is pretextual. To meet that burden, she "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons." *Fuentes*, 32 F.3d at 764. She may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in those reasons that a reasonable factfinder could find them "unworthy of credence." *Id.* at 765.

Mrs. Rynkiewicz has not met that burden. The record establishes a timeline that demonstrates that Deer Meadows intended to convert Mrs. Rynkiewicz's role from part-time to full-time before it was aware of Mr. Rynkiewicz's DOL complaint. The timeline is as follows:

- **August 14, 2025**: Mr. Rynkiewicz tells Deer Meadows that he plans to resign, effective September 12, 2025.
- **September 2, 2025**: Mr. Rynkiewicz emails Lisa Sofia to indicate that he was not going to work the remainder of his four-week notice period and would instead use his PTO until September 12, 2025.
- **October 1, 2025**: Larry Blacker is hired to succeed Mr. Rynkiewicz.

- **November 17, 2025**: Blacker decides to convert Mrs. Rynkiewicz's part-time HR Coordinator position into a full-time position.

- **November 20, 2025**: Blacker emails a recruiter with a job description for a full-time HR Coordinator position and requests the job be posted.

- **November 25, 2025**: The recruiter emails Blacker indicating that there were several qualified candidates for the full-time HR Coordinator position.

- **November 25, 2025**: The Pennsylvania DOL sends notice to Sofia advising her that Mr. Rynkiewicz filed a claim against Deer Meadows.

- **December 1, 2025**: A DOL case worker confirms that Deer Meadows should have received Mr. Rynkiewicz's complaint on or before December 1, 2025.

- **December 1, 2025**: Blacker informs Mrs. Rynkiewicz that the part-time HR Coordinator position would be converted into a full-time role, and Mrs. Rynkiewicz expresses reservations about accepting the full-time position.

- **December 3, 2025**: Mrs. Rynkiewicz emails Blacker requesting the job description for the full-time HR Coordinator position, the reason her role was being changed from part-time to full-time, the anticipated start date, and written corporate approval for the increase in hours.

- **December 4, 2025**: Blacker asks Mrs. Rynkiewicz to "advise if [full-time] availability is an option for you, and if you would like to interview for the newly-created position."[1]

- **December 15, 2025**: Blacker fills the full-time HR Coordinator position.

- **December 17, 2025**: Blacker emails Mrs. Rynkiewicz to inform her that her part-time position at Deer Meadows would end after her final shift on December 29, 2025.

Two key facts are fatal to Mrs. Rynkiewicz's claim. First, Deer Meadows initiated the process to convert the HR Coordinator role to full-time before learning about Mr. Rynkiewicz's DOL complaint—and therefore, any involvement that Mrs. Rynkiewicz may have had. In *Carlson v. Qualtek Wireless, LLC*, 2023 WL 5094566, at *4 (3d Cir. Aug. 9, 2023), the court considered a Title VII retaliation claim in which a plaintiff was terminated purportedly as part of a company-wide restructuring. *Id.* The court reasoned that "[a]lthough [plaintiff] was

[1] Mrs. Rynkiewicz later determined that accepting a full-time role would not be feasible due to her other commitments and never responded to Blacker's request.

terminated just a week after she complained about her 2019 bonus and echoed a supervisee's complaint questioning whether differences in bonuses were discriminatory, this temporal proximity does not undermine the legitimacy of [defendant's] reasons for her termination." *Id.* There, the company offered documents and testimony to corroborate that it "was, in fact, undergoing a company-wide restructuring at the time of [plaintiff's] termination." *Id.* There, the plaintiff was the only employee who was terminated. *Id.* Nonetheless, the court found that she failed to demonstrate that the company's proffered reason for her termination was pretextual, so her claim failed. *Id.*

Here, Deer Meadows has offered documents and testimony to support its position that Mrs. Rynkiewicz's role was converted to full-time to meet growing business needs. On November 17, 2025—a week before anyone at Deer Meadows was made aware of Mr. Rynkiewicz's complaint—Blacker emailed Sofia to state that "firing/terminating/laying off [Mrs. Rynkiewicz] at this time, with no reinforcement to jump in would be a temporary hardship with the change in EMR/payroll provider" given Mrs. Rynkiewicz's training on the subject. Blacker also stated "I still feel as I stated last week . . . that a [full-time] HR office persons would help us a lot." That is, the gears were in motion to convert Mrs. Rynkiewicz's role to full-time before Deer Meadows was aware of Mr. Rynkiewicz's DOL complaint.[2] Blacker reached out to a

[2] Mrs. Rynkiewicz advances a theory that Deer Meadows, at the very least, perceived of her involvement in her husband's complaint because "Mr. Rynkiewicz's dispute with Lisa Sofia in September [2025] over his unpaid wages sufficiently placed [Deer Meadows] on notice that he would soon be filing his complaint." But, Deer Meadows was not on notice of Mr. Rynkiewicz's complaint and thus was not aware of any involvement by Mrs. Rynkiewicz in preparing it until, at the earliest, November 25, 2025. She further asserts that a reasonable jury could find that "her close proximity to her husband by virtue of their spousal relationship, their shared finances, and her unique position in Defendant's organization" gave Deer Meadows a perception that she had engaged in protected activity. In support of her position, she relies on *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 572 (3d Cir. 2002). The court in *Fogleman* found that a perception theory of illegal retaliation was valid where the plaintiff asserted evidence of the perception, namely, "the circulation of [a] memo, [his manager's] somewhat 'colder' demeanor toward him after the memo's circulation, [another manager's] repeated questioning, and, of course, his termination, which he alleges was in violation of the hospital's progressive discipline policy." *Id.* Mrs. Rynkiewicz also relies on *Brock v. Richardson*, but *Brock* involved a mistaken belief that the plaintiff had already engaged in protected activity. 812 F.2d 121, 124 (3d Cir. 1987). Neither case addresses the instant circumstances here because Deer Meadows' first discovery of Mr.

recruiter to help fill the role still days before Deer Meadows was aware of Mr. Rynkiewicz's complaint.

Second, the fact that Deer Meadows invited Mrs. Rynkiewicz to apply for the full-time role—and that she decided not to do so—destroys any argument that the termination decision was pretextual. It strains credulity that an employer would invite a current employee to apply for a similar role, albeit with more demanding hours, if the employer intended to retaliate against that employee for supporting her husband's (and former colleague's) claim relating to the FLSA. *See Baron v. Abbott Lab'ys*, 772 F. App'x 25, 27 n.1 (3d Cir. May 9, 2019) (noting that the district court ruled that the plaintiff could not establish pretext because he could not show that the legitimate reason for not hiring him—that he did not apply—was pretext to a retaliatory motive). Because Mrs. Rynkiewicz admits that she decided that a full-time role would not be feasible and that she failed to indicate interest in interviewing, she cannot demonstrate any reason why a fact finder should disbelieve Deer Meadows' stated legitimate reason for her termination.[3] No reasonable jury could find that Deer Meadows' decision to restructure the HR Coordinator position was motivated by retaliation, given that the restructuring process began before Deer Meadows learned of Mr. Rynkiewicz's complaint and Mrs. Rynkiewicz did not express interest in the full-time position.

---

Rynkiewicz's complaint came after it had already decided to restructure Mrs. Rynkiewicz's role. Deer Meadows could not have perceived Mrs. Rynkiewicz's involvement in her husband's complaint when it was not aware of the complaint to begin with.

[3] In support of her argument that Deer Meadows' supplied reason for her termination was pretextual Mrs. Rynkiewicz points to record evidence that after her husband's resignation Deer Meadows stopped paying her for extra work she performed from home and that Lisa Sofia asked in September 2025 if she wanted to remain employed with Deer Meadows. These facts do not expose any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Deer Meadows' legitimate, nondiscriminatory reason for terminating her in that the decision to convert her position from part-time to full-time was made before her husband's complaint.

## IV. CONCLUSION

For the foregoing reasons, Deer Meadows' motion for summary judgment shall be granted. An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**